[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Factual and Procedural Background
This action was commenced by the plaintiff, Connecticut Airmotive, Inc., against the defendant, Sanford Farms, Inc., on April 24, 1992. Plaintiff subsequently revised its complaint on February 19, 1993. That revised complaint contains six counts: counts one through four, breach of contract; count five, civil theft pursuant to § 52-564 of the Connecticut General Statutes; and count six, a violation of CUTPA, pursuant to § 42a-110b et seq of the Connecticut General Statutes. Plaintiff claims that the defendant brought its airplane to the plaintiff for repairs and an inspection, plaintiff made these repairs, and the defendant failed to pay for those services.
As to the repairs claimed, there appears to be agreement between the parties as to the existence of three separate bills: a bill for a bird strike repair in the amount of $7,297.28 (Exhibit, Plaintiff's 1); a bill for discrepancies found by the plaintiff which plaintiff repaired at or about the same time as the bird strike repair in the amount of $5,067.74 (Exhibit, Plaintiff's 2); and a third bill in the amount of $4,000.00 for an annual inspection of the airplane and additional CT Page 5357 repairs done at that time (Exhibit, Plaintiff's 4).
The defendant filed a six count counterclaim, dated June 14, 1993. The counterclaim consists of counts one and two, negligence; count three, breach of contract; count four, negligent representation; count five, loss of use; and count six, a violation of CUTPA. In sum, the defendant claims that the plaintiff did not make the repairs correctly, broke parts of the plane while repairing it; caused title problems with the plane; and caused the defendant problems with the Federal Aviation Authority (FAA).
This matter was tried to the Court on April 7 and April 11, 1995. During the course of the trial the plaintiff called as witnesses John Grier, principal and owner of Connecticut Airmotive, Inc., and Roderick Patrick III, an employee of the plaintiff corporation. The defendant called Robert Thomas, principal and owner of the defendant corporation, and recalled John Grier as an adverse witness. At the conclusion of evidence, the court requested that counsel submit post-trial briefs on the issue of civil theft only, to be submitted on or before the close of business, April 21, 1995. Both parties complied with the court's scheduling order.
II. Discussion
After two full days of testimony in this matter, this court is convinced that despite a multi-count complaint and multi-count counterclaim, this case is a simple collection matter couched as a breach of contract claim in both the complaint and the counterclaim. It, therefore, requires a finding of what work, if any, was agreed to, what work was done, and what money is owed. Prior to the court's discussion of these issues the court does want to make brief comment on each of the other claims raised by the respective parties which do not deal with the collection/breach of contract claims.
A. Civil Theft, Count 5 of Plaintiff's Complaint
The plaintiff claims that it had the defendant's airplane in its possession, by virtue of a possessory mechanic's lien, subsequent to its completion of a variety of repairs on the airplane for which the defendant did not pay. The evidence showed that the plaintiff had the defendant's airplane parked on a public portion of Brainard Airport, with chains locked CT Page 5358 around the props of both engines. (Exhibit, Plaintiff's 5) The evidence further showed that the defendant came to Brainard Airport with several of his employees, his attorney, and a pilot, cut the chains (Exhibit, Plaintiff's 6A and 6B), and after some conversation with the FAA, had the airplane flown from Brainard Airport to Windham Airport.
Plaintiff claims that it possessed a common law lien on the airplane because the defendant did not pay the plaintiff for the work performed. That lien, plaintiff argues, allowed plaintiff to retain possession of the airplane. Plaintiff acknowledges that no statutory lien existed for aircraft repairs at the time of this action. Plaintiff concludes that because of its common law lien in defendant's airplane, defendant committed a civil theft under § 52-564 of the Connecticut General Statutes when it removed the airplane from the plaintiff's possession. If such a theft has been proved, plaintiff would be entitled to treble damages pursuant to the statute which reads: "Any person who steals any property of another . . . shall pay the owner treble the damages."
This court is not persuaded by plaintiff's argument regarding civil theft. As the defendant correctly argues in its brief, ". . . in order to prevail, the plaintiff must establish that the defendant stole property owned by the defendant." No such evidence was presented to this court. The plaintiff's principal and owner, Mr. Grier, testified that he did not own the aircraft. Plaintiff's argument then is that the defendant "stole" the plaintiff's possessory lien. Even assuming arguendo that such was the case, there is no proof that plaintiff was harmed by defendant's retaking of the aircraft. Plaintiff's claim has been protected since the early outset of this action by a prejudgment attachment granted by the court (O'Neill, J.) for the plaintiff against the defendant since May of 1992. Accordingly, the court finds in favor of the defendant on count five of the plaintiff's complaint, civil theft.
 1. Connecticut Unfair Trade Practices Act (CUTPA) Count 5, Plaintiff's Complaint Count 6, Defendant's Counterclaim
Both parties allege counts of a statutory violation of CUTPA pursuant to § 42a-110b et seq of the Connecticut General Statutes. Neither party presented any evidence to this CT Page 5359 court that the plaintiff's claim that the defendant's actions vis-a-vis the plaintiff constituted an unfair and deceptive act or practice or the defendant's claim that the plaintiff's actions constituted the same were any more than an isolated instance between them. No evidence was presented which satisfies the statutory requirement that either party's actions indicated a general business practice. Without such evidence, this court can not find a CUTPA violation. Biondi v. Ste. Lacar Holdings,Inc., d/b/a Precision Tune, 1 Conn. Ops. 293 (March 13, 1995) (Sferrazza, J.); Lanese v. Mecca, 1 Conn. Ops. 292 (March 13, 1995) (Pellegrino, J.).
Accordingly, the court finds in favor of the defendant on count 6 of the plaintiff's complaint; similarly, the court finds in favor of the plaintiff on count 6 of the defendant's counterclaim.
 2. Negligence, Counts one and two, Defendant's Counterclaim
Defendant claims in counts one and two of its counterclaim that the plaintiff's employees broke parts of the airplane while repairing other parts of it. Aside from self-serving testimony from both principals for the parties, there was no independent evidence before this court to persuade it that the plaintiff is responsible for defendant's claims that it broke the throttle cable, the in-flight communications system and the radar equipment when plaintiff's agents repaired the plane. Accordingly, the court finds in favor of the plaintiff on counts one and two of the defendant's counterclaim.
 3. Fraudulent misrepresentation, Count 4, Defendant's Counterclaim
Defendant claims that when its principal arrived at Brainard Airport to retrieve its airplane, the plaintiff's principal and owner called the FAA regarding the plane's lack of airworthiness. Defendant alleges that plaintiff's comments to the FAA agent were false and misleading. There was evidence before the court that during the plaintiff's annual inspection of the plane, it was determined that the plane needed new turbo chargers. The defendant's principal testified that subsequent to plaintiff's informing him of same, he had new turbo chargers put on the plane by the Windham airport. The defendant's principal further testified that the FAA ultimately inspected the CT Page 5360 discrepancies which plaintiff had relayed to the FAA prior to letting defendant's aircraft leave Brainard Airport. Defendant was allowed to fly to Windham under a ferry permit. Testimony at trial showed that a ferry permit is issued when a plane is other than fully airworthy; such a permit allows limited daytime flying from and to defined locations often for the purpose of repairs.
Clearly, based on this evidence, defendant's plane was not airworthy without a ferry permit at the time plaintiff's principal informed the FAA. Plaintiff did not, therefore, fraudulently represent anything to that agency. Accordingly, count four of the defendant's counterclaim is found in favor of the plaintiff.
 4. Loss of Use/Loss of Income, Count 5, Defendant's Counterclaim
Defendant claims that while the plaintiff kept the aircraft (because of the argument over the repair and inspection bills), the defendant lost money because it could not use the plane for charter. Mr. Thomas testified that charters were lost for a period of six weeks. Aside from this testimony, there was no evidence of contracts which the defendant had for charter and could not honor, no evidence of any documentary charter history to validate that the aircraft would have been chartered if available, and no documentary evidence of the value of that lost charter time. The court does not feel the defendant proved its claim for loss of use/loss of income by a fair preponderance of the evidence. Accordingly, the court finds for the plaintiff on count five of the defendant's counterclaim.
5. Breach of Contract
The remaining counts in the plaintiff's complaint (counts one through four) and the defendant's counterclaim (count three) claim breach of contract in relationship to the work done and the amount of money owed. As previously stated, the parties do not dispute and the evidence shows that there are three bills in question.
a. Bird Strike Bill
During the trial the plaintiff admitted that it owed the defendant the full amount of the bird strike repair CT Page 5361 bill which totals $7,297.28. (Exhibit, Plaintiff's 1) In fact, defendant's testimony was that he fully intended "all along" to pay that bill. Accordingly, the court awards the amount of $7,297.28 to the plaintiff with statutory interest of 10% from the date the bill became payable (thirty days from the billing date of January 24, 1992) pursuant to § 37-3a of the Connecticut General Statutes. The court feels the plaintiff is entitled to interest on this money from said date to the date of judgment since the defendant readily admitted it should have been paid all along.
b. Discrepancies Bill/Annual Inspection Bill
The second and third bills in question are actually interrelated. The evidence showed that at the same time that the plaintiff repaired the bird strike, other discrepancies were uncovered and repaired. The plaintiff returned the plane to the defendant. The plane was in the defendant principal's possession when the discrepancy bill was received. There were several conversations between the parties over this bill while the defendant had the plane in his possession. The court finds credible the defendant's testimony that he agreed with the plaintiff's principal that he would return the plane to plaintiff for a "signed-off" annual inspection (third bill), not to exceed $2,000.00 plus the discrepancy bill of $5,067.74 (second bill) for a total of $7,067.74 which would have satisfied bills two and three.
Subsequent to this agreement, the defendant returned the plane to the plaintiff. Plaintiff's principal began his work and eventually submitted the third bill to the plaintiff in the amount of $4,000.00, two thousand dollars over the amount that defendant had agreed to pay for the third bill. While there was some contradiction in the testimony of the parties regarding their respective agreement at the time of the annual inspection, as to the agreed upon amount of the annual inspection bill, the court finds the defendant's testimony to be the more credible as to that bill. The court further finds that as to the second bill, there was no great contradiction between the parties as to what work was completed. Accordingly, the court finds in favor of the plaintiff as to the second bill, the discrepancy bill, in the full amount of $5,067.74.
As to the third bill, as this court previously stated, the credible evidence showed that the defendant had entered CT Page 5362 into an agreement with the plaintiff regarding the third bill/the annual inspection bill, in the amount of $2,000.00 provided the plaintiff "signed-off" on the annual inspection. The plaintiff did not supply the defendant with a "signed-off" annual. In fact, the defendant had to go elsewhere for that annual. In light of the fact that the plaintiff did not provide the defendant with what they had bargained, the plaintiff breached the agreement. Therefore, the defendant does not have to pay the third bill. The evidence in fact established that the defendant received his annual elsewhere, receiving no credit for any work done by the plaintiff. (Exhibit, Defendant's E). Consequently, this court is obligated to offset defendant's cost in ultimately obtaining the annual inspection, less the cost of turbo chargers which defendant conceded had to be replaced prior to a "sign-off". Defendant's bill for the annual inspection (with costs of discrepancies for aircraft to be airworthy) totalled $7,065.45. This amount is less $2,654.00 (cost of two turbo chargers) for a total offset to the defendant from the plaintiff of $4,411.45. (Exhibit, Defendant's E) No interest is being awarded on either of these bills as there was valid disagreement between the parties as to what was owed.
III. Conclusion
In summary, the court finds as follows as to the plaintiff's complaint:
1. Counts one through four, breach of contract: judgment for the plaintiff as to the bird strike bill in the amount of $7,297.28, plus statutory interest of 10% from the date the money was owed (thirty days from the date of billing) to the date of judgment; judgment for the plaintiff as to the discrepancy bill in the amount of $5,067.74; and judgment for the defendant as to the bill for the annual inspection.
2. Count five, civil theft: judgment for the defendant.
3. Count six, violation of CUTPA: judgment for the defendant.
The court finds as follows as to the defendant's counterclaim:
1. Counts one and two, negligence: judgment for the plaintiff. CT Page 5363
2. Count three, breach of contract: judgment for the defendant; offset to the defendant of the cost of the annual performed at Windham airport, less the cost of the turbo chargers, for a total offset of $4,411.45.
3. Count four, negligent representation: judgment for the plaintiff.
4. Count five, loss of use: judgment for the plaintiff.
5. Count six, violation of CUTPA: judgment for the plaintiff.
SUSAN B. HANDY JUDGE, SUPERIOR COURT